UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GRAND PRAIRIE FOODS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ECHO LAKE FOODS, INC., *a Wisconsin corporation*, <br><br> Defendant. | **4:23-CV-04027-KES** <br><br><br> **ORDER DENYING MOTION TO DISMISS FOR IMPROPER VENUE AND MOTION TO TRANSFER CASE** |

Defendant, Echo Lake Foods, Inc., moves to dismiss the above-entitled matter for improper venue, or alternatively, moves to transfer venue to the Eastern District of Wisconsin. Docket 7. Plaintiff, Grand Prairie Foods, Inc., opposes these motions. Docket 11.

For the following reasons, the court denies both Echo Lake's motion to dismiss and its motion to transfer venue to the Eastern District of Wisconsin.

## Background

The facts as alleged are as follows:[1]

---

[1] In evaluating a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court may consider matters outside the pleadings. *See Spanier v. Am. Pop Corn Co.*, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016); *Multifeeder Tech., Inc. v. Brit. Confectionery Co.*, 2009 WL 5033958, at *1 (D. Minn. Dec. 15, 2009). For purposes of this motion, Echo Lake does not contest any of the factual assertions in the complaint. *See* Docket 7 at 1 n.1.

Grand Prairie is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota. Docket 1 ¶ 2. Grand Prairie primarily supplies breakfast and afternoon sandwiches to convenience stores, retail stores, and hotels. *Id.* ¶ 6. Echo Lake is a Wisconsin corporation headquartered in Burlington, Wisconsin that manufactures and supplies various food products, including precooked egg patties. *Id.* ¶¶ 7-9. To manufacture such products, Echo Lake purchases large volumes of pasteurized conventional liquid whole egg product, which are delivered to Echo Lake in tanker trucks. Docket 8 ¶ 4.

Grand Prairie began purchasing egg products from Echo Lake in 2005 and specifically began purchasing Echo Lake's egg patties in 2009. Docket 1 ¶¶ 8-9. Typically, Grand Prairie purchased egg patties from Echo Lake through separate, written purchase orders. *Id.* ¶ 10.

On March 10, 2022, Echo Lake sent Grand Prairie a letter advising that an Avian Influenza outbreak affected Echo Lake's egg supplier, and, as a result, the price of egg patties had risen. *Id.* ¶¶ 11-12. In the letter, Echo Lake informed Grand Prairie that all previous purchase orders needed to be revised to reflect the increased price, which was roughly double the initial price. *Id.* ¶¶ 12, 14. On March 14, 2022, Echo Lake sent a second letter to Grand Prairie indicating that the Avian Influenza outbreak was disrupting the egg supply

---

Thus, the court grounds its decision in the facts alleged in the complaint and the supplemental filings provided by the parties.

chain and Echo Lake would monitor orders as they came in to determine whether it had adequate supply to fulfill them. *Id.* ¶ 13; Docket 1-2.

On July 12, 2022, Grand Prairie's President, Kurt Loudenback, emailed a representative from Echo Lake, Justin Milbradt, inquiring about the continuing high prices for egg patties. Docket 1 ¶ 18; Docket 1-4 at 3. To combat these higher prices, Loudenback offered to deliver egg product to Echo Lake for the processing of egg patties, because Grand Prairie was able to procure eggs at a lower price. Docket 1 ¶ 21; Docket 1-4 at 3. Loudenback proposed that in return Echo Lake would reduce the price of the egg patties. Docket 1 ¶ 21; Docket 1-4 at 5. Milbradt refused this offer. Docket 1 ¶ 22. Instead, Milbradt proposed that Grand Prairie provide Echo Lake with egg product, which Echo Lake would pay Grand Prairie premium price for, and the price of the egg patties would stay the same. Docket 1-4 at 1-2. Loudenback agreed and the parties decided Grand Prairie would deliver one tanker truck of eggs to Echo Lake per week, subject to written purchase orders. Docket 1 ¶ 25; Docket 1-4 at 1.

After that, a Grand Prairie employee would generally reach out via email to an Echo Lake employee asking whether Echo Lake needed egg product. *See* Docket 9 ¶ 14; Docket 9-2 at 3. The Echo Lake employee would respond and send the requisite purchase order confirming the time and location of delivery. Docket 9-2 at 1-3. Grand Prairie would then precure egg product for Echo Lake through third-party suppliers and arrange for tanker trucks to pick up the egg

product from those suppliers and deliver it to Echo Lake's facilities in Wisconsin. Docket 9 ¶ 16.

During the course of the agreement, the parties agreed that Grand Prairie would provide more truckloads of egg product to Echo Lake. *See* Docket 1-5. On September 7, 2022, an Echo Lake employee emailed 47 separate purchase orders to Grand Prairie for egg product to be delivered on varying dates between September and February. Docket 9-5 at 3-4. Grand Prairie confirmed these orders. *Id.* at 2. On November 2, 2022, a Grand Prairie employee emailed Echo Lake informing it that the price of egg product was increasing, due to an Avian Influenza outbreak, and that the purchase orders needed to be revised to reflect the new price. Docket 9-6. On November 16, 2022, a Grand Prairie employee again emailed Echo Lake—this time advising that because of the Avian Influenza outbreak, Grand Prairie would be unable to fulfill many of Echo Lake's purchase orders for egg deliveries in 2022. Docket 1 ¶ 27; Docket 1-6 at 7. In a response email, Echo Lake stated it would withhold the funds it owed Grand Prairie for the egg deliveries to offset the cost of purchasing eggs on its own. Docket 1 ¶ 29; Docket 1-6 at 2. On December 15, 2022, Echo Lake sent a letter to Grand Prairie asserting that all future purchase orders for egg patties must be prepaid. Docket 1 ¶ 30; Docket 1-7.

Thereafter, Grand Prairie ceased ordering egg patties from Echo Lake and filed this action alleging breach of contract, unjust enrichment, and seeking a declaratory judgment. Docket 1 ¶ 31, 34-44. Echo Lake now moves to dismiss this action for improper venue. *See* Docket 7. In the alternative, Echo Lake

4

moves for venue to be transferred to the Eastern District of Wisconsin, because it is a more convenient forum. *Id.* Grand Prairie opposes these motions arguing (1) venue is proper because a substantial portion of the events giving rise to the claim took place in South Dakota and (2) transfer to Wisconsin would only shift the inconvenience onto Grand Prairie. *See* Docket 11 at 6-16.

## Discussion

### I. Motion to Dismiss for Improper Venue

Parties may move to dismiss a case for improper venue under Federal Rule of Civil Procedure 12(b)(3). Under Rule 12(b)(3), the moving party bears the burden of establishing that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947); *PKG Contracting, Inc. v. Smith & Loveless, Inc.*, 2020 WL 906760, at *5 (D.S.D. Feb. 25, 2020). "The question of whether venue is 'wrong' or 'improper' is generally governed by 28 U.S.C. § 1391." *PKG Contracting*, 2020 WL 906760, at *5.

Under § 1391(b), venue is proper in three circumstances. First, venue is proper in a district where "any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). Second, venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Third, if the suit can be filed in no other district, venue is proper in any district where "a defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

Echo Lake argues that because it is uncontested that Echo Lake is incorporated and headquartered in Burlington, Wisconsin, pursuant 28 U.S.C. § 1391(b)(1), venue is proper in Wisconsin. Docket 8 at 11; *see also* Docket 11 at 6-7. Grand Prairie seems to accept this argument, by recognizing that Echo Lake is headquartered in Wisconsin, but notes that "28 U.S.C. § 1391 does not require a plaintiff to bring a lawsuit in the district in which a defendant resides . . . [and because u]nder 28 U.S.C. § 1391(b)(2), venue is proper. . . this Court need not consider subsection (b)(1)." Docket 11 at 6-7. Both parties, however, mischaracterize the residency requirement for venue under 28 U.S.C. § 1391(b)(1).

As noted above, 28 U.S.C. § 1391(b)(1) authorizes laying venue where "any defendant resides, if all defendants are residents of the State in which the district is located." Because Echo Lake is the only defendant in this action, "all defendants" clearly reside in the same state. Thus, venue is proper in South Dakota so long as Echo Lake "resides" in South Dakota.

Although Echo Lake is headquartered and incorporated in Wisconsin, for venue purposes "an entity with the capacity to sue and be sued . . . whether or not incorporated, shall be deemed to reside. . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c). In short, if an entity, like Echo Lake, is subject to personal jurisdiction within a state, it "resides" there for purposes of venue. *See id.*; *Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7, 12 (8th Cir. 1965) ("Congress intended that the venue

6

requirements of 1391(c) are satisfied by showing that the defendant corporation was doing business in the district at the time the cause of action arose.").

Thus, to determine whether Echo Lake "resides" in this district for venue purposes, the inquiry turns on whether Echo Lake is subject to personal jurisdiction in South Dakota. Because Echo Lake has waived any such objection by not raising it in a timely manner, it is uncontested that Echo Lake is subject to personal jurisdiction in South Dakota. *See Carlson v. Hyundai Motor Co.,* 164 F.3d 1160, 1163 (8th Cir.1999).

In order to preserve an objection to the court's personal jurisdiction, a party must raise the defense in its first responsive pleading—in its answer or in a pre-answer Rule 12 motion. Fed. R. Civ. P. 12(h)(1)(A). "If an entity defendant waives its right to object to personal jurisdiction, then the corporation has ipso facto consented to venue under [28 U.S.C. § 1391]."
14D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, Catherine T. Struve, Vikram D. Amar, *Federal Practice & Procedure* § 3811.1 (4th ed. 2023); s*ee also Eagle's Flight of Am., Inc. v. Play N Trade Franchise, Inc.*, 2011 WL 31726, at *3 (D. Minn. Jan. 5, 2011); *Brenneman v. Great Wolf Lodge of Kansas City, LLC*, 2015 WL 6082105, at *2-3 (W.D. Mo. Oct. 15, 2015).

Here, Echo Lake made a Rule 12 motion to dismiss for improper venue, but failed to challenge personal jurisdiction, which consequently waived any such objection. Though personal jurisdiction and venue are often interrelated,

moving to dismiss for improper venue alone waives any personal jurisdiction defense. *See Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F. Supp. 2d 1039, 1046-48 (S.D. Ohio 2002) (finding a defendant's failure to challenge district court's personal jurisdiction waived a challenge for improper venue by conceding that defendant resided in district for venue purposes); *Eagle's Flight,* 2011 WL 31726, at *3 (denying a corporate defendant's motion to dismiss for improper venue because the defendant had "waived any objection to this Court's exercise of personal jurisdiction" which rendered the forum a proper venue); *Bomkamp v. Hilton Worldwide, Inc.,* 2014 WL 897368, at *6 (E.D. Mo. Mar. 6, 2014) (same); *Duke Energy Indus. Sales, LLC v. Massey Coal Sales Co.,* 2011 WL 4744907, at *2 (S.D.W. Va. Oct. 7, 2011) (same). "It would defy logic to deem [Echo Lake] subject to this Court's personal jurisdiction, due to waiver, yet dismiss the . . . claims against it for improper venue, due to lack of residency or, in other words, for want of personal jurisdiction." *Eagle's Flight,* 2011 WL 31726, at *3 (quoting *Centreville,* 197 F. Supp. 2d at 1048).

Moreover, the Eighth Circuit has stated that the "central purpose[] of statutory venue is to ensure that a defendant is not haled into a remote district having no real relationship to the dispute." *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995) (citation omitted). Here, Echo Lake is not being "haled into a remote district." *See id.* Based on the parties' long-standing, nearly twenty-year relationship in which Echo Lake delivered egg patties to South Dakota, Echo Lake knew that it was entering into an agreement with a South Dakota company. Docket 1 ¶¶ 8-9. Echo Lake engaged in negotiations regarding the

8

relevant contract by sending emails to Grand Prairie's representative in South Dakota and the contract was similarly finalized by Echo Lake sending emails to and receiving emails from South Dakota. Id. ¶¶ 12-24. After entering into the contract, Grand Prairie continually reached out, from South Dakota, to Echo Lake inquiring about egg orders and Echo Lake continually sent purchase orders to Grand Prairie in South Dakota. Id. ¶¶ 25, 27; Docket 9 ¶ 14; Docket 9-2 at 3. Echo Lake "could have (and should have) anticipated that it might be sued in [South Dakota] as a result of failing to pay the amounts due under" its contract with Grand Prairie. Eagle's Flight, 2011 WL 31726, at *3 (explaining that a defendant should have anticipated suit in Minnesota because it contracted with a Minnesota-based company, communicated with that company's Minnesota office, and the contract was controlled by Minnesota law).

Based on the foregoing, the court finds venue is proper in the District of South Dakota pursuant § 1391(b)(1) and the court need not address whether a substantial part of the events or omissions giving rise to Grand Prairie's claim occurred in South Dakota. Thus, Echo Lake's motion to dismiss for improper venue is denied.

II. **Motion to Transfer to the Eastern District of Wisconsin**

Echo Lake argues that even if venue is proper in South Dakota, the court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the Eastern District of Wisconsin. The court declines to do so.

Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally, "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394-95 (8th Cir. 1991) (quotation omitted). "To prevail . . . the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Oien v. Thompson*, 824 F. Supp. 2d 898, 903 (D. Minn. 2010).

The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l*, 119 F.3d at 693). Instead, district courts should weigh any " 'case-specific factors' " relevant to (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see also* 28 U.S.C. § 1404(a).

10

### A. Convenience

When evaluating convenience, the Eighth Circuit has considered: (1) the convenience of the parties; (2) the convenience of key witnesses; (3) the location of documentary evidence; (4) the location where the relevant conduct occurred; and (5) the applicability of each state's substantive law. *Terra Int'l*, 119 F.3d at 696. "Merely shifting the inconvenience from one side to the other. . . obviously is not a permissible justification for a change of venue." *Id.* at 696-97 (quotation omitted); *see also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

Regarding the first and second factors, Echo Lake asserts that its three key witnesses, (1) Jerry Warntjes, the Vice President and General Manager of Echo Lake; (2) Justin Milbradt, the Director of National Sales; and (3) Samantha Brown, the Production Planner, reside in either Walworth County or Racine County, Wisconsin, both of which are embraced by the Eastern District of Wisconsin. Docket 8 at 8, 12, 15-16. If this litigation were to take place in South Dakota, Echo Lake contends that these witnesses will "suffer personally due to being away from family and work[]" and Echo Lake itself "would incur expenses for travel, meals, and lodging, resulting in a substantial loss in productivity and profits." *Id.* at 16.

Grand Prairie also expects to also call three key witnesses, all of whom are located in South Dakota—(1) Kurt Loudenback, the President and co-owner of Grand Prairie; (2) Hailey Srstka, the Director of Special Products; and (3)

11

Tony McNear-Gillette, the buyer responsible for placing orders and coordinating deliveries for Grand Prairie. Docket 11 at 13-14. Grand Prairie argues that "[i]f this lawsuit were to be transferred to Wisconsin, each of Grand Prairie Foods' witnesses would be required to travel to Wisconsin and experience the same alleged concerns raised by Echo Lake [ ] of expense, travel, meals, lodging, and being away from family as the representatives of Echo Lake[.]" *Id.* at 14.

The court agrees with Grand Prairie. "In evaluating the convenience of the parties [and witnesses], courts may consider the location of the two courthouses and the travel expenses that the parties 'would likely incur. . .for airfare, meals and lodging, and losses in productivity from time spent away from work.' " *Oien*, 824 F. Supp. 2d at 903 (quoting *In re Apple*, 602 F.3d at 913). Here, however, it is clear that one party, whether the litigation takes place in South Dakota or Wisconsin, will need to incur travel expenses and costs associated with transporting witnesses and evidence. Transferring this action to Wisconsin would simply shift the inconvenience of litigating in a foreign forum from Echo Lake to Grand Prairie, and Echo Lake has not explained why Grand Prairie would be better suited to endure such inconveniences. *See Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015) (finding this factor did not weigh in favor of transfer when the defendant did not present "convincing evidence that its financial position ma[de] it incapable of litigating in [the forum]"). Thus, "the

fact of such expenses is essentially neutral" and the court finds that the first two factors do not weigh in favor of transfer. *Id.*

The third factor, the location of relevant documentary evidence, similarly does not weigh in favor of transfer. Though Echo Lake argues that "most of the documentary evidence—including the purchase orders allegedly not paid—is located in Eastern District of Wisconsin[,]" *see* Docket 8 at 16, Echo Lake does not allege *what* or *how much* documentary evidence it possesses that will need to be brought to South Dakota or why it would be difficult to transport such evidence. In fact, from the allegations in the complaint, it appears that the purchase orders that Echo Lake mentions were sent via email to Grand Prairie. *See* Docket 1 ¶¶ 24-25; Docket 9 ¶ 14; Docket 9-2 at 3. Thus, such evidence would not be burdensome to deliver, as it can be done digitally. Grand Prairie highlighted this conclusion when it noted it "expects that the exchange of documentation in this lawsuit between the companies will not be complex and can be handled electronically." Docket 11 at 15. Thus, the court finds that Echo Lake's showing is not sufficient for this factor to weigh in favor of transfer.

The fourth factor, which focuses on where the relevant conduct occurred, similarly does not weigh in favor of transfer. The substantial events underlying Grand Prairie's cause of action occurred in both Wisconsin and South Dakota. The parties negotiated and entered into the contract at issue via email. *See* Docket 1-6 at 2; Docket 1 ¶¶ 21-25; Docket 1-4.

13

Several courts, including district courts within in the Eighth Circuit, have found that where the parties negotiate and enter into a contract through electronic communications, a substantial portion of the events giving rise to a contract dispute occurred in both of the districts from which communications were sent and received. *See, e.g.*, *Hardee's Food Sys., Inc. v. Hallbeck*, 2010 WL 1141343, at *2 (E.D. Mo. Mar. 22, 2010); *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) ("The standard set forth in [§ 1391(b)(2)] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."); *Masterson v. Swan Range Log Homes, LLC*, 2007 WL 625387, at *3 (D. Idaho Feb. 23, 2007) ("[C]ourts have considered letters, faxes, emails, and telephone calls transmitted from or received in a district during negotiation and execution of a contract to be substantial events for venue purposes." (citation omitted)).

Echo Lake points out that a significant portion of the conduct giving rise to this action occurred in Wisconsin or in other states. Docket 8 at 11. Namely, Grand Prairie reached out to Echo Lake, located in Wisconsin, and offered to procure eggs for Echo Lake. Docket 8 at 11; Docket 1 ¶¶ 6-9. Grand Prairie also coordinated with, presumably, out of state suppliers to deliver the eggs to Echo Lake in Wisconsin. Docket 8 at 11; Docket 1 ¶¶ 21, 23. Echo Lake also argues that when Grand Prairie unilaterally canceled Echo Lake's purchase orders, the missing egg supply disrupted Echo Lake's productions in Wisconsin. Docket 13 at 6-7; Docket 9 ¶ 24.

But Grand Prairie made its business decisions underlying the contract here in South Dakota. *See* Docket 1 ¶ 15. It was here that Grand Prairie coordinated its own performance under the contract—organizing egg suppliers to deliver eggs to Echo Lake. *Id.* ¶¶ 24-25. It was here that Echo Lake sent its purchase orders and sent its correspondence explaining that it would not be paying the accounts payable to Grand Prairie. *See* Docket 9 ¶ 14; Docket 9-2 at 3; Docket 1-6 at 2-3. Finally, it was here that Echo Lake refused to send payment to Grand Prairie, which gave rise to this action. *See* Docket 1 ¶ 31, 34-44; Docket 1-6 at 2-3.

Thus, it appears the relevant conduct giving rise to this action occurred in South Dakota, Wisconsin, and potentially other states. As such, the court finds that this factor is neutral and does not weigh for or against transfer.

Finally, the fifth factor—the applicability of each state's substantive law—does not weigh in favor of transfer. Echo Lake does not address this factor in its briefing. But Grand Prairie notes that this case will likely be governed by the Uniform Commercial Code, which could easily be applied by either this court or a Wisconsin court. *See* Docket 11 at 16. Thus, the court finds that this factor also does not weigh in favor of transfer.

As a whole, Echo Lake has failed to show that the convenience factors "strongly" weigh in favor of transfer. *See Reid-Walen*, 933 F.2d at 1394-95.

**B. Interests of Justice**

Relevant factors affecting the "interests of justice" include:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgement, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l, Inc.*, 119 F.3d at 696. As noted above, Echo Lake, as the moving party bears the burden of showing that transfer is proper. *See id.* at 695. Echo Lake, however, did not address any of these factors. Regardless, upon an independent evaluation of these factors, the court finds they do not substantially weigh in favor of transfer.

The first factor, judicial economy, "commonly implicates concerns over duplicative litigation that could possibly be consolidated into one proceeding[,]" and does not appear to be an issue here. *In re Trusts Established Under the Pooling & Servicing Agreements*, 241 F. Supp. 3d 905, 930 (D. Minn. 2017). Instead, the court agrees with Grand Prairie in finding that "judicial economy is served by continuing the lawsuit in the forum it was commenced." Docket 11 at 16. The second factor obviously weighs against transfer, because Grand Prairie specifically chose to litigate this matter in South Dakota. *See Terra Int'l, Inc.*, 119 F.3d at 695 (highlighting the deference given to plaintiff's choice of forum). The sixth factor also weighs against transfer because even if this court transferred the matter to Wisconsin, South Dakota's choice of law rules would apply. *See Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH,* 495 F.3d 582, 585–86 (8th Cir. 2007) (following a § 1404(a) transfer, the transferee court applies the choice-of-law rules of the state where the transferor court sits). To the extent Wisconsin law may apply, "this Court is

16

accustomed to presiding over diversity actions in which the interpretation of state law other than [South Dakota] is required." *Nordyne, Inc. v. Flick Distrib., LLC*, 2009 WL 1508778, at *8 (E.D. Mo. May 28, 2009).

Finally, the remaining factors all appear to be neutral—both parties would have roughly the same costs associated with litigating in a foreign forum, and there do not appear to be any concerns with enforcing a judgment, obtaining a fair trial, or the implications of local law. *See Terra Int'l, Inc.*, 119 F.3d at 696.

Thus, the court finds that Echo Lake has failed to satisfy its "heavy burden" to show the convenience of parties, convenience of witnesses, and interests of justice "*strongly* favor" transfer to the Eastern District of Wisconsin. *See Reid-Walen*, 933 F.2d at 1394-95.

## Conclusion

Based on the foregoing, the court denies both Echo Lake's motion to dismiss for improper venue and its motion to transfer venue to the Eastern District of Wisconsin (Docket 7). Because Echo Lake did not challenge the court's assertion of personal jurisdiction over it, Echo Lake waived that argument and venue is proper before this court pursuant 28 U.S.C. § 1391(b)(1). A transfer to the Eastern District of Wisconsin under 28 U.S.C. § 1404(a) is also not warranted because Echo Lake has not overcome Grand Prairie's interest in litigating this matter in South Dakota—transferring this case to the Eastern District of Wisconsin would simply shift the inconvenience of litigating in another state from Echo Lake to Grand Prairie. Thus, it is

ORDERED that Echo Lake's motion to dismiss for improper venue (Docket 7) is denied.

IT IS FURTHER ORDERED that Echo Lake's motion to transfer venue (Docket 7) is denied.

DATED January 4, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE