UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GRAND PRAIRIE FOODS, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ECHO LAKE FOODS, INC., a Wisconsin Corporation;<br><br>　　　　Defendant. | 4:23-CV-04027-KES<br><br>ORDER TRANSFERRING OSKALOOSA FOOD PRODUCTS CORPORATION'S MOTION TO QUASH SUBPOENA |

## INTRODUCION

This matter is before the court on the complaint of Grand Prairie Foods, Inc. alleging breach of contract and unjust enrichment against Echo Lake Foods, Inc. See Docket No. 1. This opinion addresses third-party Oskaloosa Food Products Corporation's Motion to Quash, Docket No. 22, which the district court referred to this magistrate judge. See Docket No. 35.

## FACTS

Grand Prairie Foods, Inc. is a supplier of breakfast and afternoon sandwiches, such as bagel sandwiches and flame broiled cheeseburgers, which are delivered to convenience stores, retail stores, and hotels. Docket No. 1, at p. 2.[1] Echo Lake Foods, Inc. is a manufacturer and supplier of breakfast food

---

[1] To consider Oskaloosa's Motion to Quash, the court takes the facts as asserted in Grand Prairie Foods's complaint. No imprimatur of the court as to their veracity is intended.

products, including precooked egg entrees, precooked scrambled and diced eggs, French toast, pancakes, and waffles.  Id.  Grand Prairie Foods has purchased egg products from Echo Lake Foods since at least 2005, including purchases of egg patties since 2009.  Id. at p. 2-3.

In early 2022, Echo Lake Foods's supplier of eggs experienced an outbreak of Avian Influenza, commonly known as the bird flu.  Id. at 3.  On March 10, 2022, Echo Lake Foods sent a letter to Grand Prairie Foods advising of the outbreak of Avian Influenza and that all previous purchase orders with Grand Prairie Foods needed to be revised to reflect increased prices for egg patties.  Id.  On March 14, 2022, Echo Lake Foods sent another letter to some of its customers, including Grand Prairie Foods, which advised of the outbreak of Avian Influenza and that, in some instances, there may be no availability of eggs for delivery.  Id.  Echo Lake Foods then doubled the price of its egg patties, and Grand Prairie Foods paid the increased price to meet its customer obligations.  Id. at p. 4.

To minimize the financial impact of the cost of egg patties, Grand Prairie Foods agreed that it would sell eggs to Echo Lake Foods.  Id. at 5.  On September 7, 2022, Echo Lake Foods emailed Grand Prairie Foods and issued 47 purchase orders for the delivery of two truckloads of eggs per week.  Id.

On November 16, 2022, Grand Prairie Foods emailed Echo Lake Foods to inform it that an outbreak of Avian Influenza had occurred and that, as a result, Grand Prairie Foods would be unable to fulfill all but four of the remaining purchase orders.  Specifically, Grand Prairie Foods noted that its

supplier of eggs, Oskaloosa Food Products Corporation, was affected by the Avian Influenza.  Id. at p. 5-6; Docket No. 16-1, at p. 53.  The email also stated that Grand Prairie Foods had a supply of eggs secured for 2023 and could start providing eggs in January at an updated price.  Docket No. 1, at 6.  Despite that assurance, on November 28, and again on December 9, Grand Prairie Foods informed Echo Lake Foods that it had failed to find another source for the supply of eggs.  Id.

On December 15, Echo Lake Foods advised Grand Prairie Foods that it intended to withhold $567,460 owed to Grand Prairie Foods; specifically, Echo Lake Foods said that "[t]o start, we will use the $567,460 in open payables we owe you as an offset for the difference. At such time that credit is depleted, you will be fully responsible for any and all additional balances." Id.  That same day, Echo Lake Foods advised that all purchase orders for egg patties must be prepaid and that wire transfers are the only accepted method of payment.  Id.  Grand Prairie Foods rejected the demand for prepayment and stopped ordering egg patties from Echo Lake Foods.  Id.

Grand Prairie Foods sued Echo Lake Foods on February 17, 2023, alleging that it is owed at least $567,400 for the delivery of eggs, and that Echo Lake breached its contract with Grand Prairie Foods and was unjustly enriched as a result.  Id. at p. 6-8.  Echo Lake Foods answered that complaint, counterclaiming that Grand Prairie Foods breached the contract and the implied covenant of good faith and fair dealing.  Docket No. 16.

On May 21, 2024, Echo Lake Foods served a subpoena on third-party Oskaloosa.  Docket No. 23, at p. 2.  Oskaloosa is an Iowa-based corporation which provides a variety of whole, liquid, and dried egg products to the food industry.  Id. at p. 1.  Oskaloosa and Grand Prairie Foods had a pre-existing business relationship, as reflected by their April 2022 Confidentiality and Nondisclosure Agreement (the "NDA") concerning "any business relationship into which the parties may enter."  Id. at p. 1-2.  The subpoena directed Oskaloosa to produce the requested documents at the Hastings Law Firm in Oskaloosa, Iowa.  See Docket No. 24-2 at p. 1.

On June 27, 2024, Oskaloosa filed a motion to quash the subpoena under Federal Rule of Civil Procedure 45.  Docket No. 22.

## DISCUSSION

Oskaloosa argues that the subpoena should be quashed, stating that it seeks trade secrets and is overbroad and unduly burdensome.  Docket No. 22.  Echo Lake Foods responds that Oskaloosa's motion is untimely, that the price of eggs is not a trade secret, and that the subpoena is not overbroad or unduly burdensome.  Docket No. 25.  Before addressing those arguments, however, the court must first address a more fundamental question—whether there is jurisdiction over the motion to quash.

**A.     Jurisdiction**

Federal Rule of Civil Procedure 45 designates which court has jurisdiction to resolve motions to quash or modify subpoenas.  That rule provides that "[o]n a timely motion, the court for *the district where compliance*

4

*is required* must quash or modify a subpoena" under certain circumstances. Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). "[W]hen a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion." Agincourt Gaming, LLC v. Zynga, Inc., No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014). See, e.g., Short v. United States, No. 1:18-CV-00074-DCN, 2019 WL 5457994, at *2 (D. Idaho Oct. 23, 2019) (dismissing a motion to quash where the motion was filed in a court other than the court where compliance was required).

 Courts have two approaches to determining the court for the district where compliance is required. "Some courts have interpreted the place 'where compliance is required' for purposes of filing a motion to quash to mean the location identified on the disputed subpoena for the document production." York Holding, Ltd. v. Waid, 345 F.R.D. 626, 628 (D. Nev. 2024). See Pizana v. Basic Rsch., LLC, No. 118CV00644DADSKO, 2022 WL 1693317, at *2 (E.D. Cal. May 26, 2022) ("[A] majority of federal courts agree that the 'district where compliance is required' is the place of compliance named in the subpoena."). In this case, the subpoena lists Oskaloosa, Iowa as the place of compliance. See Docket No. 24-2, at p.1.

 "Other courts have interpreted the place 'where compliance is required' for a motion to quash a subpoena for the production of documents to mean the location of the subpoenaed nonparty, even if different than the location for the production of documents identified on the face of the subpoena." York Holding,

5

345 F.R.D. at 628.  See Raap v. Brier & Thorn, Inc., No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("In light of the purposes behind Rule 45, the Court finds that the better approach is to tie the place of compliance to the location of the subpoenaed person or entity.").  Here, the subpoenaed nonparty is Oskaloosa, which is located in Oskaloosa, Iowa.  See Docket No. 23, at p. 1 ("Oskaloosa is an Iowa corporation based in Oskaloosa, Iowa.").

Both approaches lead to the same conclusion—the district where compliance is required is the Southern District of Iowa, not the District of South Dakota.  Accordingly, this court is without jurisdiction to adjudicate the motion to quash.

When faced with similar facts, other courts have determined that transferring the motion to quash to the correct court is more appropriate than dismissing the motion.  See, e.g., ABC Corp. v. XMission LC, No. MC-21-00007-PHX-DWL, 2021 WL 1751294, at *3 (D. Ariz. May 4, 2021) (transferring case for lack of jurisdiction); Agricourt, 2014 WL 4079555, at *9 (same).  The court finds that approach is appropriate here.  Accordingly, the court will transfer Oskaloosa's motion to quash to the Southern District of Iowa.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that Oskaloosa's motion to quash, docket no. 22, is transferred to the Southern District of Iowa.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 8th day of October, 2024.

BY THE COURT:

*[signature]*

VERONICA L. DUFFY
United States Magistrate Judge